Minshall, J.
In 1881, Beeman,'then a minor, purchased of James Lemmon, then in life but since deceased, a certain stock of drugs, for which he paid at the time $500, the price as agreed on between them. The stock was in a store in the state of Illinois; and the sale was made by Lemmon through his agent, Dr. Everett, who sometime before had sold the stock to Lemmon, and, as his agent, had continued in possession of the property and conducted the business for him. In a short time after the sale had been made to Beeman, the goods were taken from him under an execution issued upon a judgment against Everett, upon the claim of the creditor of the latter, that they belonged to him and not to Lemmon. Bee-man made no effort to recover the property; and, in a short time after he became of age (which was in 1882) disaffirmed the contract, presented a claim to the administrator of Lemmon’s estate for the money he had paid on the purchase, and demanded its return, which was refused and the claim rejected.
No point is made as to the ownership of the goods; it is averred in the petition, and must be taken as the fact, that they belonged to the deceased at the time of the sale to Bee-man. Again there is no room for a claim, nor is it made, that the property purchased was in the nature of necessaries, *509 and the contract, for such reason, incapable of being dis-affirmed ; nor is it claimed that the decedent or his agent was in any way deceived as to the age of Beeman at the time the sale was made : The only question presented upon the record is, whether upon the facts as stated, the minor had the right, on becoming of age, to rescind the contract and recover the consideration he had paid, without returning the property that had beeu sold and delivered to him.
The true doctrine now seems to be that the contract of an infant is in no case absolutely void. 1 Par. Cont. 295, 328; Pol. Cont. 36; Harner v. Dipple, 31 Ohio St. 72; Williams v. Moor, 11 M. & W. 256. An irifant may, as a general rule, disaffirm any contract into which he has entered, but, until he does so, the contract may bo said to subsist, capable of being made absolute by affirmance, or void by disaffirmance, on his arriving at age ; in other words, infancy confers a privilege rather than imposes a disability. Hence, the disaffirmance of a contract by an infant is the exercise of a right similar to that of rescission in the case of an adult — the ground being minority, independent of questions of fraud or mistake. But, in all else, the general doctrine of rescission is departed from no farther than is necessary to preserve the grounds upon which the privilege is allowed; and is governed by the maxim that infancy is a shield and not a sword. He is not in all cases, as is an adult, required to restore the opposite party to his former condition; for if he has lost or squandered the property received by him in the transaction that he rescinds, and so unable to restore it, he may still disaffirm the contract, and recover back the consideration paid by him without making restitution ; for, if it were otherwise, his privilege would be of little avail as a shield against the inexperience and improvidence of youth. But when the property received by him from the adult is in his possession, or under his control, to permit him to rescind without returning it, or offei’ingto do so, would be to permit him to use his privilege as a sword rather than as a shield.
This view is supported not only by reason, but by the greater weight of authority. It was recognized and applied by this *510 court in Cresinger v. Welch, 15 Ohio, 156, decided in 1846. The following is the language used by Mr. Tyler on the subject: “ If the contract has been executed by the adult, and the infant has the property or consideration received, at the time he attains full age, and he then repudiates the transaction, he must return such property or consideration, or its equivalent, to the adult party. If, however, the infant has wasted or squandered the property or consideration received during infancy, and on .coming of age repudiates the transaction, the adult party is remediless.” He then adds that, “There are expressions of judges and text-writers against this latter proposition, but,” he says, “ the weight of authority is in harmony with it, and is decidedly in accord with the general principles of law for the protection of infants.” Tyler Inf., 2d ed., 80, and cases cited by the author. See, also, the case of Price v. Furman, 27 Vt. 268, aud the notes thereto of Mr. Ewell in his Leading Cases on Infancy and Coverture, 119. After an exhaustive review of the cases, this author says, “ The true doctrine, and the one supported by the weight of authority (at least in the United States), would seem to be that, where an infant disaffirms his executed contract after arriving at age, and seeks a recovery of the consideration moving from him, and where the specific consideration received by him remains in his hands in specie at the time of the disaffirmance, and is capable of return, it must be returned by him; but if he has during infancy wasted, sold or otherwise disposed of, or ceased to possess the consideration, aud has none of it in his hands in kind on arriving at majority, he is not liable therefor, and may disaffirm without tendering or 'accounting for such consideration.”
This statement of the law, supported as it is, not only by the greater weight of authority but also of reason, meets with our full approval. There is, however, much conflict in the decisions of the different states, greater, perhaps, than upon any other question connected with the law of infancy (Met. Cont. 76); but we deem it unnecessary to attempt to review or discuss them, for the very good reason, that it has been • done with thoroughness and ability by the authors just referred to.
*511 See, also, the notes of Mr. Ewell to the recent case of Adams v. Beall, decided by the Maryland Court of Appeals, 26 Am. L. Reg. 760.
We have been cited by counsel for the defendant below to a number of the previous decisions of this court, supposed to affect the right of the plaintiff to recover; but a careful examination will disclose that such is not the case. In Starr v. Wright, 20 Ohio St. 97, a conveyance had been made by a father to his minor son, it being without any consideration, and intended to defraud creditors; and, during minority, the son had reconveyed to the father to enable him to raise money and pay his creditors, who for a full consideration then conveyed to the defendant. The court denied the right of the son on arriving at age to disaffirm his deed of reconveyance. Being the voluntary grantee of his father, the son had done no more than was his moral duty to do, and what he might have been compelled to do in favor of creditors and purchasers. The court applied the maxim that infancy is a shield and not a sword. The case is quite analogous in principle to the leading one of Zouch v. Parsons, 3 Burr. 1794, decided by Lord Mansfield in 1765. It was there held that where an infant does what he might have been compelled by a court of equity to do, he can not afterwards disaffirm his act. In Harner v. Dipple, 31 Ohio St. 72, the question was .whether an undertaking executed by an infant for stay of execution was void, or only voidable. The court held that it was voidable only, and might therefore be, as it had been, affirmed by the infant on arriving at age. In Curtiss v. McDougall, 26 Ohio St. 67, it appears an infant had purchased a team of mules, and at the same time had executed a mortgage on them to secure the purchase-money. He afterwards sold the property to his father, who brought an action in replevin against an assignee of the mortgage to recover possession. The claim was based on the theory that, by the subsequent sale of the mortgaged property, the infant had disaffirmed the mortgage, as he would have had a right to do. It is difficult to see how the sale of the property purchased could be treated as a disaffirmance of the contract by which he had acquired it; it' was rather an *512 affirmance than a disaffirmance of that contract, and entirely consistent with the existence of the mortgage that he had given to secure the payment of the purchase-money. Again, there was no positive disaffirmance by the infant, the claim being made by a third person, his grantee, although the rule is well settled that the privilege is personal to the infant, and is not available to third persons. (1 Par. Cont. 329.) But the court placed its decision upon the broader ground, that it was not within the privilege of, the infant to disaffirm the security he had given for the purchase-money, without also avoiding the purchase, saying that, “ in such case if the infant would rescind a part he must rescind the whole contract, and thereby restore to the vendor the title acquired by the purchase; ” again applying the principle that infancy may be used as a shield but not as a sword. So that the claim of the plaintiff in replevin defeated his right to recover, as a disaffirmance of the mortgage would necessarily have divested the title by which he claimed the property.
It is apparent that none of these cases, when rightly considered, affect the right of the plaintiff to disaffirm the purchase made of the decedent, and to recover the consideration paid. Neither he, nor any one claiming under him, makes any claim to the property purchased. By his disaffirmance the title has been restored to the estate of the vendor, and the property, or its value, may be recovered by the administrator, if it was wrongfully taken by the sheriff under the execution against Everett.

Judgment affirmed.